IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRACEY DANIELS and<br>TAMMY FESSENDEN | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | Case No. CIV-18-1115-R |
| CSAA GENERAL INSURANCE COMPANY, | ) <br> ) <br> ) | |
| Defendant. | ) | |

## ORDER

Before this Court is Defendant CSAA General Insurance Company's ("CSAA" or "Defendant") Motion for Partial Summary Judgment (Doc. 24). Plaintiff Tammy Fessenden[1] ("Plaintiff" or "Fessenden") has responded. *See* Doc. 27. Having considered the parties' submissions, the Court finds as follows.

**I.   Background**[2]

On December 18, 2017, Plaintiff was a passenger in a vehicle driven by Tracey Daniels that was involved in a hit-and-run vehicle accident. Doc. 24, at 4. The tortfeasor who hit the vehicle was never located. *Id*. at 5. Daniels and her vehicle were both insured under a CSAA policy ("Policy"), which was in force on the date of the accident. *Id*. at 4. Two separate coverage provisions under the Policy were relevant to Fessenden: the

---

[1] Tracey Daniels has settled her claims with CSAA. *See* Doc. 36.
[2] Included here are those material facts supported by the record and not genuinely disputed in the manner required by Fed. R. Civ. P. 56(c). The Court views the factual record and all reasonable inferences drawn from it in the light most favorable to Plaintiff, the non-movant. *See Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

Medical Payments coverage, which was limited to $25,000 per person, and the Uninsured/Underinsured Motorist ("UM") Coverage, which was limited to $250,000 per person. *Id.* at 5. On January 9, 2019, CSAA sent a letter to Plaintiff's counsel, requesting that Plaintiff "(1) supply an executed medical authorization . . ., (2) forward all medical billings in her possession to CSAA, and (3) forward all future medical billings 'as they are received.'" *Id.* The medical authorization was never returned. *Id.* at 6. As to medical expenses, Plaintiff submitted bills totaling $27,734.30 to CSAA; CSAA paid out $25,000 for these bills under the Medical Payments coverage, thereby exhausting it. *Id.*

On June 11, 2018, CSAA received a demand from Plaintiff to settle her UM claims for $250,000—the limit on UM coverage under the Policy. *Id.* at 7. CSAA's claims adjuster, Chelsea Rasovic, responded to Plaintiff's demand by offering to settle her UM coverage claim for $5,000. *Id.* at 9. Ms. Rasovic clarified to Plaintiff's counsel that this $5,000 offer "was for Plaintiff's compensation of general (non-economic) damages only," which Ms. Rasovic valued at $5,000 to $8,000. *Id.*[3] Plaintiff eventually filed suit against CSAA in state court on October 10, 2018, alleging that CSAA "acted in bad faith and violated its obligation of fair dealing to [Plaintiff] by failing to fully and fairly investigate her claim; and by making an arbitrarily low offer which is not reasonable considering the extent and severity of her injuries." Doc. 1-2, at 2; Doc. 24, at 10. Defendant removed the suit on November 13, 2018. *See* Doc. 1.

---

[3] "Economic or special damages have been defined as those which can either be assigned an exact dollar figure or calculated with reasonable mathematical certainty (medical bills, lost income, etc.). Noneconomic or general damages include elements which cannot be fixed with an exact monetary amount (pain and suffering, physical impairment, disfigurement, etc.)." *Gov't Emps. Ins. Co. v. Quine*, 2011 OK 88, ¶ 3 n.2, 264 P.3d 1245, 1247 (citation omitted); *see also* 23 O.S. § 61.2(H)(2), (6).

## II.     <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)). In short, the Court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

While the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party, *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712–13 (10th Cir. 2014), "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact]

could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

**III.     Discussion**

Defendant contends it is entitled to summary judgment on Plaintiff's bad faith claim because this dispute "boils down to a disagreement over the value of Fessenden's general damages—i.e., her physical and mental pain and suffering." Doc. 24, at 11. Plaintiff, conversely, contends that Defendant's motion should be denied because (1) Defendant's claims evaluation process was "terribly flawed"; (2) Ms. Rasovic was "poorly trained and so lacking in basic medical and legal knowledge as to be unable to properly evaluate the case"; and (3) Defendant's $5,000 settlement offer "was so low as to be facially and patently unreasonable." Doc. 27, at 3. Oklahoma law governs this diversity suit. *See Evanston Ins. Co. v. Law Office of Michael P. Medved, P.C.,* 890 F.3d 1195, 1198 (10th Cir. 2018).

Under Oklahoma law, "[a]n insurer has an implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 26, 121 P.3d 1080, 1093 (internal quotation marks and citation omitted). Where an insurer denies a claim based solely on a legitimate dispute, there is no inference of bad faith. *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1127 (10th Cir. 2012). But a legitimate dispute "will not act as an impenetrable shield against a valid claim of bad faith." *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 343 (10th Cir. 1995). "Even when the evidence reveals a legitimate possible basis

for a dispute," the issue of bad faith is properly submitted to a jury if evidence shows that the insurer did not rely on that legitimate dispute to deny coverage or the insurer failed to adequately investigate the claim. *Bannister*, 692 F.3d at 1128; *see also McCorkle v. Great Atlantic Ins. Co.*, 1981 OK 128, ¶ 21, 637 P.2d 583, 587 ("[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [an] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case."). "Whether an insurer's actions reasonably give rise to an inference of bad faith must be determined in light of all facts known or knowable concerning the claim at the time plaintiff requested the [insurer] to perform its contractual obligation." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1439 (10th Cir. 1993) (internal quotation marks and citation omitted).

Viewing the record in the light most favorable to Plaintiff, the Court cannot hold that, as a matter of law, Defendant's actions were reasonable. Specifically, the evidence pertaining to Defendant's settlement offer gives rise to differing inferences that preclude the Court from granting summary judgment. As noted, Defendant admits that the medical bills submitted by Plaintiff totaled $27,734.30. Doc. 24, at 6–7. Most, but not all, of these bills were paid by exhausting the Policy's $25,000 Medical Payments coverage. *Id*. at 6. Defendant also admits that Chelsea Rasovic, its claims adjuster assigned to Plaintiff's case, valued Plaintiff's non-economic damages at $5,000 to $8,000. *Id*. at 9.

What these admissions do not resolve, however, is whether Defendant's $5,000 UM coverage settlement offer was intended to address the $2,734.30 in medical bills above the $25,000 Medical Payments coverage limit, in addition to Plaintiff's non-economic

5

damages. If Defendant's UM coverage settlement offer was intended to cover both these medical bills and Plaintiff's non-economic damages, then the $5,000 settlement did not reflect CSAA's $5,000 valuation of non-economic damages. Rather, the $5,000 settlement offer, broken down, would have been the total of (1) $2,734.30 in submitted medical bills and (2) $2,265.70 in compensation for Plaintiff's non-economic damages. If this was not CSAA's intention, then CSAA seems to have simply ignored the $2,734.30 in medical bills it admits it had received when it offered to settle Plaintiff's UM claim. *See id*. at 7.

In its motion, Defendant appears to take the latter position, asserting that, "[b]ecause the economic element of Plaintiff's loss (her medical bills) had been paid under the Medical Payments coverage of the Policy, Plaintiff was only entitled to receive Uninsured Motorist funds for compensation of the non-economic element of loss related to this claim." *Id*. at 9; *see also id*. at 1 ("[B]ecause CSAA acted reasonably and because a legitimate dispute exists as to the value of Plaintiff's UM claim—*i.e.*, her general damages—CSAA is entitled to summary judgment in its favor with respect to Plaintiff's bad faith claim." (emphasis omitted)); *id*. at 15 ("[T]he only issue raised by Plaintiff is whether or not CSAA's evaluation of Plaintiff's UM claim, particularly her claim for general damages . . . was reasonable. Said differently, this lawsuit involves a mere value dispute regarding Fessenden's general damages."). Excerpts from Ms. Rasovic's deposition, attached to Plaintiff's response brief, seem to support Defendant's position:

> Q [Plaintiff's counsel]: So you had 25 [thousand dollars in Medical Payments coverage] and then you had general damages of 5 to 8 [thousand], and that means no matter what the actual real bills ended up being, the most you were going to pay was 30 to 33 [thousand] total; is that true?

A [Rasovic]: Based on all the records I have, correct.

Doc. 27-1, at 29. However, Ms. Rasovic's offer letter to Plaintiff's counsel indicates a contrary view. *See* Doc. 24-11, at 2 ("The purpose of this letter is to extend our offer of $5,000 new money in settlement of your client's claim. . . . *All the special/records you presented were taken into account with my offer*." (emphasis added)).

To the extent Defendant argues that Plaintiff could not recover for medical bills above $25,000 under the Policy's UM coverage, it cites no law or Policy language in support of such a proposition. Nor is it clear why Plaintiff's exhaustion of the Medical Payments coverage would bar her from recovering under the UM coverage for additional medical bills. Regardless, the UM coverage settlement offer, in light of the summary judgment record, does not present a simple, legitimate dispute over valuation, as Defendant contends. If the settlement offer meant to account for only Plaintiff's non-economic damages, then Defendant has failed to explain why the $2,734.30 in medical bills were ignored under the Policy's UM coverage. If the settlement offer meant to account for *both* the medical bills and Plaintiff's non-economic damages, then Defendant has failed to explain why its offer vis-à-vis the non-economic damages was lower than the lowest bound of its own valuation range (*i.e.* $5,000) for those damages. Either way, genuine disputes as to material facts persist, and the Court, therefore, cannot hold that Plaintiff's bad faith claim is barred as a matter of law.[4]

---

[4] In light of its conclusion, the Court need not consider Plaintiff's assertions that Defendant failed to properly train Chelsea Rasovic and otherwise deployed a flawed claims adjusting process.

## IV. Conclusion

If, in light of the facts construed in favor of the non-moving insured, the insurer's conduct "may be reasonably perceived as tortious," the issue of the insurer's alleged bad faith is properly submitted to the jury. *Garnett v. Gov't Emps. Ins. Co.*, 2008 OK 43, ¶ 22, 186 P.3d 935, 944. This case presents such a circumstance. Accordingly, Defendant's motion for partial summary judgment is denied.[5]

IT IS SO ORDERED this 28th day of August, 2019.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[5] Pending before the Court is Defendant's *Daubert* motion or, in the alternative, motion *in limine*. *See* Doc. 28. Plaintiff attaches her expert's opinion to her response. The Court reached its ruling, as set forth above, without consideration of the conclusions of Plaintiff's expert. Thus, the issues presented in Defendant's pending motion do not impact the results of this Order.